UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA SCHULTZ,

    Plaintiff,

v.

OLYMPIC MEDICAL CENTER, a Washington Public Hospital District, and its BOARD MEMBERS, MIKE GLENN, a married person, in his capacity as Administrator of Olympic Medical Center, LAURA JOSHEL, in her capacity as Employee Relations Coordinator, STEVE HASELWANDER, in his capacity as manager of the Olympic Medical Sleep Center, UNITED FOOD AND COMMERCIAL WORKERS LOCAL 21, a labor organization,,

    Defendants.

Case No. C07-5377 FDB

ORDER GRANTING MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DENYING MOTION TO EXTEND DISCOVERY AND REOPEN DEPOSITION OF DR. SUSAN FERRELL

This matter comes before the Court on Plaintiff's Motion to Extend Discovery Deadlines, Reopen the Deposition of Dr. Susan Ferrell and Compel Production of Documents. After reviewing

ORDER - 1

1 all materials submitted by the parties and relied upon for authority, the Court is fully informed and
2 hereby grants the motion to extend discovery, compel production and reopen the deposition of Dr.
3 Susan Ferrell.

**Introduction and Background**

Plaintiff Donna Schultz filed this employment discrimination case on July 26, 2007. Plaintiff claims she was subject to age discrimination and wrongful discharge by her employer Olympic Medical Center [OMC].

Plaintiff was employed with OMC from February 7, 2000 until September 1, 2006 when at age 60 her employment was terminated. Plaintiff held the position of Cardiac Wellness Technician 1" until August 1, 2003, when she was transferred to the position of "Polysomnagraphic Technician 2" (Sleep Tech). As a Sleep Tech, Plaintiffs primary responsibility involved scoring sleep studies and transferring this information to a CD-Rom, which was then provided to a physician for review.

Steve Haselwander was hired as the Supervisor of OMC's Sleep Disorder Center in November 2004. Some time in late 2005, Mr. Haselwander informed Plaintiff that a new position of Neurphysiology Technologist would be created upon approval from OMC's administration.

On February 6, 2006, Mr. Haselwander conducted Plaintiff's annual performances appraisal and commented that Plaintiff "out preforms all other technologists in quality and technical understanding." On March 24, 2006, Plaintiff was informed that a non-disciplinary counseling session was scheduled for March 24, 2006, to discuss the Plaintiff's work performance. At this meeting Plaintiff was presented with a letter documenting poor work scoring studies and a discussion occurred concerning Plaintiff's unsatisfactory work performance A plan was devised to conduct four weekly meetings to provide Plaintiff with feedback on her work performance. Plaintiff did not attend two of the scheduled followup meetings due to transportation problems or family illness. Plaintiff continued to be counseled regarding her work performance and was given a disciplinary memo regarding an incident of non-compliance with HIAA regulations.

ORDER - 2

The job description for the Neurphysiology Technologist position was posted on May 1, 2006. Plaintiff and another employee Lindsay Johnson, requested transfer to this new position. Lindsay Johnson had been transferred from the position of Medical Office Assistant to a position of Sleep Tech on February 6, 2006. Ms. Johnson was offered and accepted the new position of Neurphysiology Technologist. Plaintiff filed a grievance through her union regarding this decision. The union took no action.

Plaintiff believed that Supervisor Haselwander took a personal, as well as professional, interest in the twenty-four year old Ms. Johnson. Plaintiff alleges that Ms. Johnson was not qualified for the transfer to Sleep Tech and that she was less qualified than Plaintiff for transfer to the Neurphysiology Technologist position. Plaintiff also asserts that Mr. Haselwander falsified documentation relating to Plaintiff's sleep study test scoring with the intention of terminating her employment. Plaintiff asserts that her work hours were severely reduced and she became an unofficial part-time employee. Plaintiff's employment was ultimately terminated on September 1, 2006.

**Pre-trial Discovery**

Plaintiff filed this lawsuit on July 26, 2007, alleging that OMC and the individually named defendants engaged in age discrimination and that she was wrongfully discharged. On January 14, 2008, the Court entered an Order setting a trial date of December 15, 2008 and scheduling pre-trial discovery to terminate on August 18, 2008.

On June 17, 2008, Plaintiff was deposed. At the deposition Defendant entered as exhibits excerpts of certain sleep study reports purportedly scored by Plaintiff. These exhibits were entered to establish Defendant's position that Plaintiff's employment was terminated due to the deterioration in her work scoring sleep studies.

On July 15, 2008 Plaintiff served discovery request on Defendants requesting, among other things, copies of patient sleep studies scored by Plaintiff and those scored by Lindsay Johnson.

ORDER - 3

Plaintiff then scheduled for August 5, 2008, the deposition of Dr. Ferrell, the Medical Director of the Sleep Lab and the reviewing physician of Plaintiff's sleep study reports. The deposition notice requested the production at deposition of "[a]ll sleep studies scored by [Plaintiff] Donna Schultz and [her replacement] Lindsay Johnson from December 2005 until August 2006 and/or all sleep studies scored by Donna Schultz and Lindsay Johnson during the start of your [Dr. Ferrell] employment at OMC's Sleep Lab until, 2006."

Defendant OMC and Dr. Ferrell objected to the request for production on the basis that pursuant to Fed. R. Civ. P. 30(b) and 34, OMC was entitled to 30 days in which to respond to Plaintiff's request for production. Defendant further asserted that the request seeks confidential and privileged information, the request is overly broad and unduly burdensome, and lacks relevance and is improper in scope. Dr. Ferrell's deposition was taken as scheduled. The requested sleep study documents were not provided.

Plaintiff followed up with two motions to this Court. Plaintiff moved to compel production of documents pursuant to subpoena duces tecum [Dkt # 31] and motion to extend discovery deadlines and reopen deposition of Dr. Ferrell. Plaintiff asserts in her motions that she is entitled to the sleep study reports. Plaintiff further asserts that it was not possible to adequately depose Dr. Ferrell without the requested sleep study reports. Defendants respond that they had no obligation to respond to the subpoena duces tecum and that they filed an appropriate response to the request for production on August 18, 2008. Defendants assert that the requested documents are confidential and privileged, the request is overbroad, unduly burdensome and seeks irrelevant patient records. Defendants oppose the reopening of Dr. Ferrell's deposition on the basis of lack of diligence by Plaintiff and resulting prejudice.

**Fed. R. Civ. P. 30(b)(2) and 34**

It is well settled that Fed. R. Civ. P. 30(b)(2) provides that any deposition notice which is served on a party deponent and which requests documents to be produced at the deposition must

ORDER - 4

comply with the thirty-day notice requirement set forth in Fed. R. Civ. P. 34. Rule 30(b)(2) provides that a "notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition." Rule 34 grants respondents thirty days to file a written response after service of requests for production. A party may not unilaterally shorten that response period by noticing a deposition and requesting document production at that deposition. The deposition notice for Dr. Ferrell did not allow Defendants the requisite thirty days to respond to the request for production of documents. Such procedural infirmity, however, did not, in and of itself, defeat the discovery. Due to the infirmity, Defendants simply had no duty to produce documents at Dr. Ferrell's deposition. Defendants did, however, have the obligation to respond with the responsive documents and/or written objections by the end of the thirty-day period. Defendants served and filed its written objections to the requested production within that time frame, on August 18, 2008. The fact that the deposition notice failed to give Defendants thirty days to respond is therefore immaterial now, except as it relates to the issue of whether Plaintiff should be allowed to reopen Dr. Ferrell's deposition.

**Confidential and privilege information objections**

The Court will first address Defendants' objection that the request for production calls for production of patient records protected by the Health Insurance Portability and Accountability Act (HIAA) and Washington State Health Care Information Act, and which may not be subject to disclosure to third parties without patient authorization.

HIAA contains special rules governing the disclosure of "individually identifiable health information." See Citizens for Health v. Leavitt, 428 F.3d 167, 172 (3rd Cir. 2005). The "privacy rule," prohibits care providers from using or disclosing an individual's "protected health information" except where there is patient consent or the use or disclosure is for "treatment, payment, or health care operations." Leavitt, at 173. "Protected health information" is health information that identifies the individual or with respect to which there is a reasonable basis to believe the information can be

ORDER - 5

used to identify the individual. The redaction of information that identifies the individual patient or that can be used to identify the individual removes the application of the HIAA privacy rule.

Similarly, the Washington State Health Care Information Act defines "health care information" as "any information, whether oral or recorded in any form or medium, that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care. RCW 70.02.010(6). See Wright v. Jeckle, 121 Wn. App. 624, 630, 90 P.3d 65 (2004)(definition of health care information has two requisites: patient identity and information about the patient's health care. Disclosure of one requisite without the other is not a violation of the Health Care Information Act).

The Plaintiff has indicated that she has no objection to the redaction of individual identification markers contained in any requested sleep study document. Accordingly, Defendant may redact from the requested sleep study documentation any patient identity information subject to HIAA or Washington State privacy rules.

HIPAA's privacy provisions further allow for disclosure of medical information in the course of judicial proceedings. However, the Act places certain requirements on both the medical professional providing the information and the party seeking it. Under HIAA, disclosure is permitted, pursuant to a court order, subpoena, or discovery request when the healthcare provider "receives satisfactory assurance from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order." 45 C.F.R. § 164.512(1)(e)(ii)(b). The protective order must prohibit "using or disclosing the protected health information for any purpose other than the litigation," and "[r]equire the return to the [health care provider] or destruction of the protected health information ... at the end of the litigation or proceeding." 45 C.F.R. § 164.512(1)(e)(v).

Here, the parties have stipulated to a protective order which protects medical records. [Dkt. #23] The protective order satisfies the requirements of HIAA because it (1) prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or

ORDER - 6

proceeding for which such information was requested; and (2) requires the return or destruction of the protected material at the conclusion of the litigation. Thus, the protective order is adequate under HIAA to protect third party medical records.

The Court finds no merit to Defendant's confidentiality and privilege objections.

**Relevancy objections**

The Court will next turn to Defendants' objection that the requests seek irrelevant information. Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter to the action. Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal.1998). A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing on the subject matter of the action. Id. When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Oleson v. Kmart Corp., 175 F.R.D. 560, 565 (D. Kan. 1997).

Defendants contend that the request seeks irrelevant information to the extent it asks for the production of documents "not directly related to the claims or defenses in this case." The Defendants, however, have made it clear that their defense to this action is that an alleged deterioration in Plaintiff's work in scoring sleep studies is the basis for her termination from employment. The Court finds that the request is not overly broad in its scope. Plaintiffs are entitled to the requested documents relating to Plaintiff's scoring of sleep studies. The Court will therefore overrule this particular objection.

The Court does, however, find the requested sleep study scoring reports conducted by Lindsay Johnson to be irrelevant. These sleep studies have no relevance to the assertion that Plaintiff

ORDER - 7

was terminated due to the deterioration in her work. Nor has there been any allegation that Ms. Johnson's conduct in scoring sleep studies had a bearing on her promotion over Plaintiff.

## Overly broad and unduly burdensome

Defendants next contend that the request is overly burdensome information because its temporal scope is overly broad. Defendants contends the temporal scope is too broad because Plaintiff seeks sleep studies scored by Plaintiff from January 2000 to present. Defendants also claim that the privileged nature of the documents will require obtaining hundreds of patient authorizations and require thousands of redactions of patient identifiers. As noted by Defendants, Plaintiff did not begin scoring sleep studies until her transfer to Sleep Tech on August 1, 2003. Defendants state that Plaintiff's subpoena seeks production of approximately 555 patient sleep studies and that the each sleep study, if printed off the software, consists of approximately one thousand pages. Further, patient identifiers appear on each page of the reports. Defendants assert that production of this amount of documentation, with necessary redactions of patient identifiers is overly burdensome.

In an effort to lesson the burden, Defendants offer to produce a sampling of the requested documents and those introduced in Dr. Ferrell's deposition. Plaintiff would be permitted to view these sleep studies on a computer in the Sleep Lab under appropriate supervision to ensure patient records protection.

The Court is not persuaded by this argument. Nor does the Court find Defendants' proposal sufficient. A party resisting discovery on the grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. This includes any objection to the temporal scope of the request. Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658 (D. Kan. 2004). The Court also recognizes that the scope of discovery is particularly broad in employment discrimination cases. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989). The nature of the defense presented by Defendants, deterioration in performance, requires that Plaintiff, (and likely the Defendants) be able to compare and contrast over time the sleep study scoring conducted by

ORDER - 8

Plaintiff. While the redaction of identifying markers may be burdensome, the Court is not convinced it is unduly burdensome.

Defendants are required to provide Plaintiff access to the sleep study reports scored by Plaintiff. Defendants can comply with this discovery by providing hard copies or by providing Plaintiff the ability to view the sleep studies on a computer in the Sleep Lab facility. Plaintiff is entitled to make copies, at her own expense, of any of these sleep studies she deems appropriate to this case. The parties shall ensure that all documents are protected from disclosure to third parties in accordance with HIAA and the Washington State Health Care Information Act.

In light of the above, the Court will overrule Defendants' objections that the requests are overly broad and unduly burdensome.

**Reopening of the deposition of Dr. Ferrell**

Although possibly imprudent, the Rule 34 request for production of sleep studies was timely as Defendants had until the last day of discovery to respond. The Court must address Plaintiff's request that she be allowed an extension of the discovery cutoff to reopen the deposition of Dr. Susan Ferrell so that she may be examined in regard to the disclosed sleep study reports.

Rule 16 of the Federal Rules of Civil Procedure governs deadlines and dates set by the court. A scheduling order controls the subsequent course of an action unless it is modified by the court. Fed. R. Civ. P. 16(e); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). A scheduling order cannot be modified "except upon a showing of good cause." Fed. R. Civ. P. 16(b); Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002). Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment, and the court may modify the scheduling order if it cannot reasonably be met despite the diligence of the party seeking the extension. Johnson, at 609. A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order. Zivkovic, at 1087. Although the existence or degree of

ORDER - 9

prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. Johnson, at 609. The decision to modify a scheduling order is within the broad discretion of the district court. Johnson, at 607; Miller v. Safeco Title Ins. Co., 758 F.2d 364, 369 (9th Cir. 1985).

The Court finds that Defendant has made An insufficient showing of good cause to extend discovery and reopen the deposition of Dr. Ferrell. As previously address, a request for production of documents at deposition is subject to the thirty-day period to respond as provided in Rlue 34. See, Rule 30(b)(2). Plaintiff did not make a Rule 34 request for production of documents until thirty days prior to August 18, 2008; the cutoff date for discovery. Accordingly, Defendants had no obligation to respond to the request for discovery until the last day of discovery. Through Plaintiff's own actions the sleep study documents were unavailable at the time of conducting Dr. Ferrell's deposition. Plaintiff has not shown that with the exercise of due diligence, she was unable to comply with this Court's scheduling order so as to obtain Rule 34 discovery prior to deposing Dr. Ferrell. Good cause has not been shown to extend discovery and reopen the deposition of Dr. Ferrell.

**Conclusion**

For the above stated reasons the Court will compel production of the sleep studies. Discovery will not be reopened, other than to provide the Rule 34 production, and Plaintiff is not entitled to reopen the deposition of Dr. Susan Ferrell.

ACCORDINGLY;

IT IS ORDERED:

Plaintiff's motion to compel production [Dkt. # 33] is **GRANTED**. Defendants shall produce the sleep study documents in accordance with the terms of this order. Patient identifying markers shall be redacted and the documents subject to the protective order.

Plaintiff's motion to extend discovery and reopen the deposition of Dr. Ferrell [Dkt. # 33] is **DENIED**.

ORDER - 10

DATED this 22nd day of August, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 11