UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA SCHULTZ,

    Plaintiff,

v.

OLYMPIC MEDICAL CENTER, a Washington Public Hospital District, and its BOARD MEMBERS, MIKE GLENN, a married person, in his capacity as Administrator of Olympic Medical Center, LAURA JOSHEL, in her capacity as Employee Relations Coordinator, STEVE HASELWANDER, in his capacity as manager of the Olympic Medical Sleep Center, UNITED FOOD AND COMMERCIAL WORKERS LOCAL 21, a labor organization,,

    Defendants.

Case No. C07-5377 FDB

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' motion for summary judgment. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and for the reasons stated below, hereby denies the motion to dismiss Plaintiff's age discrimination claims, and claim for breach of the collective bargaining agreement. Defendants' motion to dismiss the claim of negligent infliction of emotional distress is granted.

ORDER - 1

## Introduction and Background

Plaintiff Donna Schultz filed this employment discrimination case on July 26, 2007. Plaintiff claims she was subject to age discrimination and wrongful discharge by her employer Olympic Medical Center [OMC] under the Age Discrimination in Employment Act (ADEA), 26 U.S.C. § 621-634 and the Washington Law Against Discrimination (WLAD), RCW 49.60. Plaintiff also asserts a claim for negligent infliction of emotional distress and breach of her Collective Bargaining Agreement.

OMC operates a sleep lab in Port Angeles, Washington. Patients spend sleeping hours in the lab being monitored with equipment designed to record sleep patterns. The patient's polysomnogram (sleep study) is electronically captured and stored on propriety software known as Sandman. OMC's day shift Polysomnographic Technologists (sleep techs) use the Sandnan software to score the sleep studies in accordance with standards adopted by the American Academy of Sleep Medicine (AASM). These standards provide the criteria for measuring sleep patterns, such as sleep apneas.

Donna Schultz is board certified in three fields of study: Electroencephalography (EEG), Evoked Potentials, and Polysomnography. Mrs. Schultz is one of four such credentialed individuals in the State of Washington as of July 2005. Mrs. Shultz's OMC supervisor at the time of her termination, Steve Haselwander, is also so credentialed. In February, 2000, at age 57, Mrs. Schultz began her employment with OMC in the Cardiac Department as a Cardiac Wellness Technician. Plaintiff held this position until August 1, 2003, when she was transferred to the newly opened Sleep Disorder Center as a sleep tech. As a sleep tech, Plaintiff's primary responsibility involved scoring sleep studies and transferring this information to a CD-Rom, which was then provided to a physician for review. Plaintiff also occasionally administered and interpreted EEG's.

From 2003 until November 2004, Frank Huber was the sleep lab supervisor at OMC and Plaintiff's immediate supervisor. After an initial period of review and feedback, Mr. Huber found

ORDER - 2

Mrs. Schultz's work quality, overall, to be excellent. The physician who reviewed the sleep scores and also provided feedback during this time was Dr. Jakdej Nikomborirak (Dr. Jak). Dr. Jak had originally recommended Mrs. Schultz for the sleep tech position. He found her responsive to feed back and her work to be satisfactory. At no time did it appear to Dr. Jak that Plaintiff was incapable of properly scoring seep studies.

Sleep study scoring, in general, is a fairly subjective field and not an exact science. It generally takes more than a year of scoring before someone can begin scoring consistently and become what is deemed a good scorer. In recognition of this subjectivity, the AASM require scoring comparison on the average of once a month and requires a concordance standard within which scores must meet. Upon supervisor Huber's departure in 2004, Mrs. Schultz's scoring was within the concordance standards.

From the beginning of her employment with OMC, Dr. Laird Patterson, a neurologist, worked with Mrs. Schultz in his duties relating to reading EEG's. Dr. Patterson, up until his retirement in April of 2006, found Mrs. Schultz to be a highly competent EEG technician. The technical skills required for administering and interpreting EEG's are analogous to those required for scoring sleep studies.

Steve Haselwander was hired as the supervisor of OMC's Sleep Disorder Center in November 2004. According to Mrs. Schultz although on more than one occasion Haselwander made age derogatory comments about other employees, the relationship between Haselwander and Plaintiff appeared to have begun in a favorable manner. In July of 2005 Mr. Haselwander commended Mrs. Schultz to the local newspaper as an exemplary employee of OMC. Some time in late 2005, Mr. Haselwander informed Plaintiff that a new position of Neurphysiology Technologist would be created upon approval from OMC's administration. Mr. Haselwander indicated that based on their credentials (his and Mrs. Schultz's), they were the only two qualified individuals for the position in the county.

ORDER - 3

Although Haselwander noted some issues with Mrs. Schultz's technical performance in February 2005, a year later on February 6, 2006, when Mr. Haselwander conducted Plaintiff's annual performances appraisal, he commented that Plaintiff "out performs all other technologists in quality and technical understanding."

In October of 2005, 24-year-old Lindsay Johnson was hired as Medical Office Assistant at the Sleep Disorder Center. Lindsay Johnson did not have a college degree and her related work experience was a year of service as a medical office assistant. Soon thereafter, in accordance with the view of Plaintiff, Mr. Haselwander became infatuated with Ms. Johnson. In February of 2006, Mr. Haselwander let it be known to Plaintiff that he had received permission to promote Ms. Johnson to the position of sleep tech. It is Plaintiff's view that Ms Johnson received the promotion in violation of the Collective Bargaining Agreement and without the necessary qualifications required for the position.

On March 24, 2006, approximately six weeks after Plaintiff's exemplary annual evaluation, Haselwander sent to OMC's Employee Relations Coordinator, Laura Joshel, an email indicating a concern for Mrs. Schultz's work for the past six months. Plaintiff was then informed that a non-disciplinary counseling session was scheduled for March 29, 2006, to discuss the Plaintiff's work performance. At this meeting Plaintiff was presented with a letter documenting poor work scoring studies and a discussion occurred concerning Plaintiff's unsatisfactory work performance. Mrs. Schultz was shocked at this development and insisted that there was no deterioration in her work. A plan was devised to conduct four weekly meetings to provide Plaintiff with feedback on her work performance. Plaintiff did not attend two of the scheduled followup meetings due to the breakdown of her automobile and a major heart attack suffered by her husband.

Plaintiff continued to be counseled regarding her poor work performance and was given a May 25, 2006 disciplinary reprimand regarding an incident of non-compliance with HIAA regulations in handling patient records.

ORDER - 4

The job description for the Neurphysiology Technologist position was posted on May 1, 2006. Plaintiff and Lindsay Johnson, requested transfer to this new position. Although Ms. Johnson was admittedly less qualified by experience and credentials than Mrs. Shultz, Haselwander states that when Mrs. Shultz's performance deteriorated and she acted negatively to counseling, he concluded that Mrs. Shultz was not as qualified for the position as Lindsay Johnson. Haselwander and OMC determined that they would provide Ms. Johnson with on-the-job training to permit her to qualify to take her EEG and EP exams within one year of completing the requisite experience. Plaintiff was thus passed over and Ms. Johnson was offered and accepted the new position of Neurphysiology Technologist. Plaintiff believed that Ms Johnson had not only lacked the qualifications for her initial promotion to Sleep Tech in February 2006, but she was even less qualified for transfer to the Neurphysiology Technologist position some three months later. Plaintiff filed a grievance through her union claiming a violation of the Collective Bargaining Agreement. Following Step I of the grievance process, the union concluded that arbitration would not be successful and withdrew the grievance.

On June 1, 2006, Haselwander issued a final non-disciplinary counseling letter addressing Mrs. Schultz's continued poor performance and resistance to constructive criticism. This letter documented examples of ways in which Plaintiff's sleep scoring failed to meet guidelines and how her EEG methodology was flawed. Mrs. Shultz did not believe that the obvious mistakes documented in her sleep study scoring were made by her. She indicated her suspicion that the studies could have been manipulated or rescored to create the errors. Haselwander pointed out the urgent need for improvement. Haselwander committed to the continued review of Mrs. Shultz's performance. Haselwander states that despite significant counseling, Mrs. Shultz's performance never improved after March 29, 2006. Because no improvement was foreseeable with the continued counseling, Haselwander prepared a formal disciplinary notice on July 28, 2006.

On August 17, 2006 OMC issued its Notice of Intent to Terminate Ms. Schultz's

ORDER - 5

employment. A pre-termination meeting was conducted in which Mrs. Schultz was supported by her union and she presented her rebuttal to the termination notice. The termination was upheld and on August 30, 2006, at age 60 Mrs. Schultz was formally terminated.

Plaintiff grieved her termination through her union. Again the union ultimately declined to pursue arbitration. Mrs. Shultz's appeal of this decision within the union was denied.

Plaintiff filed this lawsuit alleging that OMC and the individually named defendants engaged in age discrimination and that she was wrongfully discharged

**Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987).

When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, at 248. These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, at 322-23. Rule 56(e) compels the

ORDER - 6

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. Anderson, at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not significantly probative." Id. at 249-50. The nonmoving party must identify with reasonable particularity the evidence that precludes summary judgment. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).

**Age Discrimination in Employment**

The Age Discrimination in Employment Act (ADEA) makes it unlawful "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The Washington Law Against Discrimination (WLAD) similarly prohibits age discrimination with regard to the right to obtain and hold employment. RCW 49.46.180. Age discrimination claims under the ADEA or WLAD are analyzed using the three-stage burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973). Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004); Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 180, 23 P.3d 440 (2001). Under this framework, the employee must first establish a prima facie case of age discrimination. Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000). Second, if the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. Third, if the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. Diaz, at 1207; Coleman, at 1281. "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1124 (9th Cir.

ORDER - 7

2000).

A plaintiff can establish a prima facie case of disparate treatment by demonstrating that she was (1) at least forty years old, (2) performing her job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. <u>Diaz</u>, 521 F.3d at 1207-08; <u>Coleman</u>, 232 F.3d at 1281. The requisite degree of proof necessary to establish a prima facie case is minimal on summary judgment and does not need to meet a preponderance of the evidence standard. <u>Coghlan v. Am. Seafoods Co.</u>, 413 F.3d 1090, 1094 (9th Cir. 2005).

Plaintiff meets the first element of a prima facie case because she was over age forty at the time of her termination. Likewise, she was discharged, which satisfies the third element. Remaining at issue are the second and fourth elements.

To satisfy the second element of her prima facie case, a plaintiff must show she was performing her job satisfactorily. To establish this element, a plaintiff must "produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue." <u>Douglas v. Anderson</u>, 656 F.2d 528, 533 n. 5 (9th Cir. 1981). For instance, a plaintiff who showed he "generally performed dependably and without incident" and had relatively few and minor deficiencies met this burden. <u>Diaz</u>, 521 F.3d at 1208. In contrast, a plaintiff who violates company policy and fails to improve performance despite warnings has not demonstrated satisfactory performance. <u>Diaz</u>, 521 F.3d at 1208. However, an employer's production of significant rebuttal evidence does not necessarily preclude a finding that a plaintiff has met the burden of producing substantial evidence satisfactory job performance for the purposes of establishing a prima facie case. <u>Douglas</u>, 656 F.2d at 533 n. 5.

OMC contends that Mrs. Shultz cannot establish that she was performing her job satisfactorily at the time of her termination. In support of this position, OMC relies upon the evidence of deterioration in Plaintiff's performance, the counseling provided Plaintiff, and resulting

ORDER - 8

discipline that occurred from February 2006 until the date of her termination in August 2006.

Plaintiff refutes this evidence with the argument that the evidence of deteriorating performance was itself a pretext for her dismissal. She supports this argument with evidence of her history of satisfactory performance, including her February 2006 annual evaluation which stated that she out performs all other technologists in quality and technical understanding. Plaintiff contends that Defendants engaged in a months-long scheme to document a contrived deterioration in performance.

OMC's argument that Plaintiff cannot show satisfactory job performance somewhat blends the issue at the prima facie stage, where a plaintiff need only make a minimal showing that she is qualified, with the issue at the third stage that an employer's reasons were not pretextual, which a plaintiff can only overcome with a specific, substantial showing. The Ninth Circuit has warned against conflating these two stages. Aragon v. Rep. of Silver State Disposal, 292 F.3d 654, 659 (9th Cir. 2002). Indeed, in a case where the employer argued the plaintiff could not establish he was performing his job satisfactorily, the Ninth Circuit deferred discussion of that issue until the pretext stage. Messick v. Horizon Indus. Inc., 62 F.3d 1227, 1229-30 (9th Cir. 1995). While a record of declining performance might, in some cases, be sufficient to support a conclusion that plaintiff had not met her minimal prima facie burden, it cannot have that effect here, where the employee alleges that the evidence of declining performance itself is refutable. Were the Court to conclude that Mrs. Shultz had not proved a prima facie case, it would effectively prevent any analysis as to Defendants' motivations for taking the actions they did. Considering the Ninth Circuit precedents, and the generally low standard at the prima facie stage, Plaintiff has met her burden here. Mrs. Shultz was qualified for her position at the time she was hired. The issue is whether she remained qualified at the time she was terminated or whether OMC's actions were a pretext for her termination.

Finally, an employee can satisfy the last element of the prima facie case only by providing evidence that she was replaced by a substantially younger employee with equal or inferior

ORDER - 9

qualifications." Diaz, 521 F.3d at 1207-08 n. 2.  Plaintiff has produced sufficient evidence that Ms Johnson, a substantially younger employee with inferior qualifications, received the promotion over Plaintiff.  Defendants' argument that Plaintiff and Ms. Johnson are not similarly situated because of Mrs. Shultz's alleged performance problems is an inappropriate blending of this element with that of "adequate job performance."

The Court finds that Plaintiff has produced requisite degree of proof necessary to establish a prima facie case on summary judgment.

Once a plaintiff makes out a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the employment action.  This requires the employer only to set forth a legally sufficient explanation for rejecting the plaintiff.  Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir. 1985).  This burden is "one of production, not persuasion, thereby involving no credibility assessment." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1148-49 (9th Cir. 2006).

Defendants have provided evidence demonstrating poor performance was the reason for Plaintiff's termination.  Defendants has offered copies of performance reviews, warnings, and declarations by Plaintiff's supervisors.  Defendants put forth an explanation, which if true, is a legally sufficient non-discriminatory reason for Plaintiff's termination.  Defendants therefore have met their burden.

Where the employer articulates a legitimate, nondiscriminatory reason for the challenged action, the "presumption of unlawful discrimination simply drops out of the picture." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000).  The burden then shifts "back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual." Lowe, at 1008; see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002).  To survive summary judgment, plaintiff must adduce evidence that defendants acted with discriminatory animus, or that their "proffered explanation is unworthy of credence." Texas Department of Community

ORDER - 10

Affairs v. Burdine, 450 U.S. 248, 256 (1981); Chuang v. University of California Davis, Board of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000). The evidence on which plaintiff relies need not be different than that which supports her prima facie case. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000); Snead v. Metropolitan Property & Casualty Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001). When relying on circumstantial evidence to prove pretext, a plaintiff must produce specific and substantial evidence "that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." Chuang,. at 1122. The jury can "infer the ultimate conclusion of discrimination from the falsity of the employer's explanation." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147 (2000). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Id. Other factors to consider in determining pretext include what information is known to the defendant at the time of the adverse employment decision, the plausibility of the explanations offered in light of the evidence, and any inconsistencies within the explanations offered. Norris v. City and County of San Francisco, 900 F.2d 1326, 1331 (9th Cir. 1990).

Although OMC has provided evidence of Plaintiff's deteriorating performance, a reasonable jury could nonetheless conclude for several reasons that age discrimination was the real motive for Mrs. Schultz's termination.

As evidence of pretext, Plaintiff points to the close proximity of her alleged declining performance to the hiring and promotion of Ms Johnson. The circumstances surrounding the conduct of Haselwander in the ascension of Ms Johnson and the onset of Mrs. Shultz's performance deficiencies do raise a material issue of fact as to pretext. Plaintiff has presented evidence that her performance was satisfactory, if not more, at least until February 2006, six months prior to her termination. It was during this same few months that twenty-four year old Ms. Johnson, who lacked Mrs. Shultz's experience and held no credentials, was hired, promoted to the equivalent position held

ORDER - 11

Plaintiff, and ultimately promoted to the newly created position that Haselwander had stated Plaintiff was the only person qualified to hold. Plaintiff argues that the disciplinary write-ups and counseling she received for poor work performance were disingenuous, at best, and that Haselwander had the capability to manipulate Plaintiff's sleep study scoring to reflect poor performance.

The Court finds that a reasonable fact-finder could believe that Plaintiff denied promotion and terminated from her employment on the basis of her age so that Ms. Johnson could have her position. Plaintiff has presented a material issue of fact as to pretext by showing Defendants' explanation may be unworthy of credence.

Plaintiff has raised a material issue of fact precluding a grant of summary judgment for Defendants on the claims of age discrimination under both the Age Discrimination in Employment Act (ADEA), 26 U.S.C. § 621-634 and the Washington Law Against Discrimination (WLAD), RCW 49.60.

**Breach of Collective Bargaining Agreement**

Plaintiff asserts as a separate claim a breach of contract action alleging a violation of the collective bargaining agreement by her employer, OMC. Defendants respond that OMC fully processed Mrs. Schultz's two grievances and that her poor performance disqualified her for promotion and just cause existed for the termination of her employment.

Generally, an employee seeking a remedy for a breach of a collective bargaining agreement must attempt to exhaust any grievance and arbitration procedures established by that agreement prior to bringing suit. <u>Clayton v. International Union</u>, 451 U.S. 679, 680-82 (1981). Defendants do not assert that Plaintiff failed to exhaust her grievance procedures. In fact, Defendants claim that Mrs. Shultz's grievances were fully processed. Accordingly, there is no procedural bar to her action.

The evidence as to "just cause" for termination and the lack of qualifications for promotion have been addressed previously in this Order and have been found to raise a genuine is issue of fact**,** precluding summary judgment. Thus, Defendants motion for summary judgment on the claim of

ORDER - 12

violation of the collective bargaining agreement is denied.

**Negligent Infliction of Emotional Distress**

In Washington, the tort of negligent infliction of emotional distress requires a showing that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach is a proximate cause of damages, and (4) damages did indeed result. <u>Snyder v. Medical Service Corp. of Eastern Washington,</u> 145 Wn.2d 233, 243, 35 P.3d 1158 (2001). Washington state common law on negligent infliction of emotional distress in the workplace provides:

> An employee may recover damages for emotional distress in an employment context but only if the factual basis for the claim is distinct from the factual basis for the discrimination claim.... A claim ... also requires that [the claimant] establish that the emotional distress is manifested by objective symptoms ... [and] there must be objective evidence regarding the severity of the distress and the causal link between the actions of the employer and the subsequent emotional reaction of the employee.

<u>Haubry v. Snow</u>, 106 Wn.App. 666, 678-79, 31 P.3d 1186 (2001); <u>Little v. Windermere Relocation, Inc</u>., 301 F.3d 958, 972 (9th Cir. 2002).

Plaintiff's claim for negligent infliction of emotional distress fails as it has no factual basis independent of the age discrimination claim.

**Conclusion**

For the above stated reasons Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgement on the Age Discrimination in Employment Act (ADEA), 26 U.S.C. § 621-634 and the Washington Law Against Discrimination (WLAD), RCW 49.60., claims is denied. Defendants' motion for summary judgment on the claim for negligent infliction of emotional distress is granted.

ACCORDINGLY;

IT IS ORDERED:

Defendants' Motion for Summary Judgment [Dkt. # 49] is **GRANTED IN PART AND DENIED IN PART.** Defendants' motion to dismiss Plaintiff's age discrimination claims under the

ORDER - 13

ADEA and WLAD is denied. Defendant's motion to dismiss Plaintiff's claim for breach of the collective bargaining agreement is denied. Defendants' motion to dismiss the claim of negligent infliction of emotional distress is granted.

DATED this 30th day of September, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 14